UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **MEGAN ROSE** | **CIV. ACTION NO. 3:23-00865** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **CITY OF MONROE** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to stay filed by Defendant Megan Russell, [doc. #15], and a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants City of West Monroe and Ray Spoon. [doc. #26]. The motions are opposed. [docs. #25, 31].

For reasons assigned below, it is recommended that the motion to dismiss be GRANTED IN PART and DEFERRED IN PART, and the motion to stay be GRANTED.

Background

Plaintiff Megan Rose ("Rose") filed the instant suit on June 27, 2023. Complaint [doc. #1]. After filing two amended complaints, Amended Complaint [doc. #5]; Second Amended Complaint [doc. #13], Rose filed a third – and controlling – amended complaint on February 21, 2024. Third Amended Complaint [doc. #42]. The City of Monroe, Monroe Police Department, City of West Monroe ("West Monroe"), Police Department of West Monroe, Metro Narcotics Unit, Ouachita Parish Sheriff's Office, Officer Ray Spoon ("Spoon") of the Police Department of West Monroe, and Officer Megan Russell ("Russell") of the Ouachita Parish Sherriff's Office (collectively "Defendants") are all named as defendants. *Id.* at p. 2. Russell and Spoon are sued in both their official and individual capacities. *Id.* Rose alleges that Defendants are liable for

violations of her rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments of the U.S. Constitution and Article 1, §§ 2 and 5 of the Louisiana Constitution, as well as for various torts. *Id.* at p. 6. On October 23, 2023, Russell filed her motion to stay. M/Stay [doc. #15]. West Monroe and Spoon filed the motion to dismiss on December 22, 2023. M/Dismiss [doc. #26].

The events giving rise to the instant action occurred on the evening of June 27, 2022. That night, Rose was leaving a friend's house. Third Amended Complaint [doc. #42, p. 3]. She entered her car and began backing out of the house's driveway. *Id.* While Rose's car was reversing, three unmarked vehicles stopped at the end of the driveway. *Id.* Three men exited the vehicles and approached Rose's car. *Id.* The men were wearing vests, two of which read "Police" while the other said "Sheriff." *Id.* Rose did not see any identifying badges and was suspicious that the men were impersonating law enforcement but rolled down her car's window to speak with them. *Id.* Without announcing himself as a law enforcement officer, one of the men addressed Rose by saying "Hi, how are you doing?" *Id.* At this point, two of the men drew their firearms. *Id.* at p. 4. Fearing for her safety, Rose resumed backing out of the driveway. *Id.* The man wearing the "Sheriff" vest was behind Rose's car as she reversed but managed to move out of the vehicle's path before being struck. *Id.* Now on the right-side of the car, the man in the "Sheriff" vest hit the butt of his firearm on one of the vehicle's windows as Rose drove past. *Id.*

Rose exited the driveway and drove to a main road, whereupon she called 9-1-1 and told the dispatcher that she was being pursued by "strange men who [she] believed were impersonating police." *Id.* The dispatcher indicated that the men were indeed police officers and directed Rose to pull her car to the side of the road, which she did. *Id.* After Rose stopped, Russell approached the vehicle with her gun drawn and shouted, "Get out the car!" *Id.* Rose put her hands up as she exited the vehicle. *Id.* Russell grabbed Rose's wrist and "aggressively

2

pushed [her] against" the stopped car. *Id.* Spoon had joined Russell at this point, and the two "threw [Rose] to the ground" before handcuffing and Mirandizing her. *Id.*

On August 16, 2022, Rose was charged with aggravated battery and resisting an officer. Bill of Information [doc. #15-2]. Rose commenced her civil suit in this court on June 27, 2023. Complaint [doc. #1]. Russell moved to stay the civil proceedings on October 23, 2023. M/Stay [doc. #15]. Rose filed an opposition to the motion on December 8, 2023. Opposition to M/Stay [doc. #26]. Less than two weeks later, on December 22, 2023, West Monroe and Spoon filed their motion to dismiss. M/Dismiss [doc. #26]. Rose filed an initial opposition to this second motion on February 7, 2024, Opposition to M/Dismiss [doc. #31], which West Monroe and Spoon replied to on February 8, 2024. Reply to Opposition to M/Dismiss [doc. #33]. A surresponse was filed by Rose on February 21, 2024. Surresponse to M/Dismiss [doc. #40]. The movants seeking dismissal filed a surreply on February 22, 2024. Surreply to Opposition to M/Dismiss [doc. #43]. Russell filed a second brief in support of her motion on February 28, 2024. Supplemental Memo in Support of M/Stay [doc. #46].

Briefing is complete. Accordingly, this matter is ripe.

## Analysis

**I.  Legal Standard**

a.  *Federal Rule of Civil Procedure 12(b)(6)*

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility simply calls for enough factual

allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim," *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152-53 (5th Cir. 2010), but "[t]hreadbare recitals" of those elements "supported by mere conclusory statements" are insufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678. Factual pleadings that are "merely consistent with" a defendant's liability "stop[] short of the line between possibility and plausibility." *Id.* (quoting *Twombly*, 550 U.S. at 557). All well-pleaded facts are accepted as true and viewed in the light most favorable to the plaintiff, *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007), although courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). In conducting the Rule 12(b)(6) analysis, courts must consider the complaint in its entirety, as well as documents incorporated into the complaint by reference and matters of which the court may take judicial notice. *Jackson v. City of Hearne*, 959 F.3d 194, 204-05 (5th Cir. 2023) (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)).

b. *Stay of Civil Proceeding*

A district court is authorized to stay a civil proceeding during the pendency of a parallel criminal proceeding. *United States v. Little Al*, 712 F.2d 133, 136 (5th Cir. 1983). Such a stay is appropriate when civil claims are related to rulings that will likely be made in the parallel criminal case. *Wallace v. Kato*, 549 U.S. 384, 393-94 (2007). Courts also typically consider the following factors when determining whether a civil case should be stayed in favor of a criminal case:

> (1) the extent to which the issues in the criminal and civil cases overlap; (2) the status of the case, including whether the defendant has been indicted; (3) the

4

> plaintiff's interest in proceeding expeditiously weighed against the prejudice to the plaintiff caused by a delay; (4) the private interest of and burden on the defendant; (5) the interest of the court; and (6) the public interest.

*Matthews v. City of Bossier City*, No. 23-00894, 2023 WL 8195516, at *8 (W.D. La. Nov. 9, 2023) (quoting *Villani v. Devol*, Civ. Action No. 15-0852, 2016 WL 1383498, at *2 (M.D. La. Apr. 7, 2016)), *report and recommendation adopted*, 2023 WL 8191904 (W.D. La. Nov. 27, 2023). However, the first factor – the similarity of issues between the civil and criminal actions – is considered the most important inquiry. *Matthews*, 2023 WL 8195516, at *9 (citing *Villani*, 2016 WL 1383498, at *2).

**II.     Motion to Dismiss**

The undersigned first examines the motion to dismiss filed by West Monroe and Spoon. Analysis begins with the claims brought against Spoon in his official capacity before turning to those brought against him in his individual capacity. The undersigned then reviews the claims against West Monroe.

a.      *Claims Against Officer Spoon*

Rose alleges that Spoon is liable for, *inter alia*, false arrest, assault, battery, excessive use of force, and intentional infliction of emotional distress, all in violation of her rights under the United States and Louisiana constitutions. Third Amended Complaint [doc. #42, p. 6]. Spoon is sued in both his official and individual capacities. *Id.* at p. 2. Spoon argues that the official-capacity claims should merge with those against West Monroe and be dismissed, and that he is entitled to qualified immunity against the individual-capacity claims. Memo in Support of M/Dismiss [doc. #26, pp. 13-14].

i.      Official Capacity Claims

In § 1983 actions where a defendant-official is sued in both his individual and official capacities, and the municipality of which he is an official is also sued, "there potentially exists an overlapping cause of action" whereby "[t]he official-capacity claims and the claims against the governmental entity essentially merge." *Turner v. Houma Mun. Fire & Police Civ. Serv. Bd.*, 229 F.3d 478, 485 (5th Cir. 2000). Claims against defendant-officials in their official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 690 n.55 (1978)); *see also Jones v. City of Houston*, 756 F.App'x 341, 346 n.2 (5th Cir. 2018) ("We treat suits against municipal officials in their official capacities as suits against the municipality itself."). Such claims should be treated as a suit against the government entity "[a]s long as [the entity] receives notice and an opportunity to respond." *Graham*, 473 U.S. at 166.[1]

Rose has sued Spoon in both his official and individual capacities. Spoon is an agent of West Monroe, which is a defendant in the instant action. West Monroe is thus on notice of the official-capacity claims and can respond to these claims. Therefore, it is appropriate to dismiss the duplicative official-capacity claims against Spoon, leaving West Monroe in his place.

Accordingly, it is RECOMMENDED that the claims against Spoon in his official capacity be dismissed with prejudice.[2]

---

[1] This is relevant in part because "an award of damages against an official in his personal capacity can be executed only against the official's personal assets, [but] a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." *Id.*

[2] Spoon contends that the claims brought against him in his official capacity "should be dismissed for the same reasons that support [West Monroe]'s dismissal." Memo in Support of M/Dismiss [doc. #26, p. 13]. The undersigned turns to the claims against West Monroe *infra*.

    ii.        Qualified Immunity

Spoon argues that he is shielded from the remaining individual-capacity claims brought against him by qualified immunity. *Id.* at pp. 13-15. To overcome a defendant-official's invocation of qualified immunity, a plaintiff must show that the defendant-official's conduct violated clearly established law. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). To meet this burden, the plaintiff faces a two-prong test. The plaintiff must demonstrate that the defendant-official committed a constitutional violation under current law, *Crostley v. Lamar Cnty.*, 717 F.3d 410, 422 (5th Cir. 2013), and that the defendant-official's actions were objectively unreasonable in light of law that was clearly established at the time of the alleged violation. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).

It is evident that qualified immunity analysis necessarily implicates the criminal charges Rose faces in state court. For instance, a finding in this case that Spoon did not exercise excessive force or perpetrate a false arrest may prejudice Rose's defense to the resisting arrest charge. Comity and caselaw dictate that this Court should not make dispositive determinations on matters entangled with ongoing state criminal matters. *See Kato*, 549 U.S. at 393-94 ("If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending . . . criminal trial), it is within the power of the district court . . . to stay the civil action . . . ."); *see also id.* (citing *Heck v. Humphrey*, 512 U.S. 477, 487 n. 8 (1994) ("[I]f a state criminal defendant brings a federal civil-rights lawsuit during the pendency of his criminal trial . . ., abstention [of the federal court] may be an appropriate response to the parallel state-court proceeding.")).

Accordingly, it is RECOMMENDED that the Court defer ruling on whether Spoon is entitled to qualified immunity until after Rose's criminal proceedings have concluded.

b.  *Claims Against the City of West Monroe*

Rose asserts West Monroe is liable for the alleged misconduct of Spoon, as well as for negligence and failure to train under a theory of *respondeat superior*. Third Amended Complaint [doc. #42, p. 6].[3] West Monroe counters that it cannot be held liable on a *respondeat superior* theory of harm under § 1983. Memo in Support of M/Dismiss [doc. #26, pp. 9-10]. The municipality further argues that Rose has failed to allege any policy or custom that gave rise to the alleged rights violations. *Id.* at pp. 10-13.

Section 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured . . . ." 42 U.S.C. § 1983. The statute does not create any substantive rights; it simply provides a remedy for the rights designated therein. *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997). "Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983." *Id.* (quoting *Johnston v. Harris Cnty. Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989)).

Section 1983 claims against government entities are referred to as municipal liability or *Monell* claims. *Edwards v. City of Balch Springs*, 70 F.4th 302, 307 (5th Cir. 2023). "[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436

---

[3] Rose asserts numerous bases for liability. These include excessive use of force and arrest without probable cause, resulting in deprivation of rights ensured by the Fourth, Fifth, Eighth, and Fourteenth Amendments of the U.S. Constitution, as well as Article 1, §§ 2 and 5 of the Louisiana Constitution. *Id.* Rose also asserts that Defendants are liable for intentional infliction of emotional distress, negligence and gross negligence, and "intentional torts under the laws of the State of Louisiana." *Id.* Regarding the tort claims, Plaintiff asserts that the alleged misconduct was "in violation of Article I of the Constitution of the United States." *Id.* The undersigned observes that Article I concerns the legislative branch of the federal government, not the substantive rights of individuals. *See generally* U.S. CONST. art. I.

U.S. at 691. Rather, to succeed on a *Monell* claim, a plaintiff must prove that he was deprived of a protected right (1) pursuant to an official municipal policy (2) promulgated by the municipal policymaker (3) that was the moving force behind the violation. *Edwards*, 70 F.4th at 307.[4] An official policy may be shown through written policy statements, ordinances, or regulations; a widespread practice that is so common and well-settled as to constitute a custom that represents municipal policy; or a single act conducted by an official or entity with final policymaking authority. *Sweetin v. City of Texas City*, 48 F.4th 387, 392 (5th Cir. 2022). For a practice to constitute a custom, it must have occurred for so long or so frequently that "the course of conduct warrants attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice" of municipal employees. *Martinez v. Nueces Cty.*, 71 F.4th 385, 389 (5th Cir. 2023) (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 850-51 (5th Cir. 2009)). There is a "single incident exception" to the policy or custom requirement, but the exception is "extremely narrow." *Valle v. City of Houston*, 613 F.3d 536, 542 (2010) (quoting *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th Cir. 2008)). Indeed, to plausibly plead a practice "so persistent and widespread as to practically have the force of law," a plaintiff must describe more than just the incident giving rise to his putative injury. *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). Concerning the policymaker prong, "[a]ctual or constructive knowledge of [a] custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policymaking authority." *Valle*, 613 F.3d at 542 (quoting *Webster v. City of Houston*,

---

[4] The undersigned notes that this analysis does not raise the same issues discussed *supra* in relation to Spoon's qualified immunity argument. The existence or non-existence of a municipal policy does not implicate any elements of the aggravated battery or resisting arrest charges Rose faces. Consequently, it is appropriate to proceed with analysis of West Monroe's arguments for dismissal.

735 F.2d 838, 842 (5th Cir. 1984) (en banc)).  The Fifth Circuit distinguishes between final policymaking authority and final decision-making authority.  *Valle*, 613 F.3d at 542.  An individual is a final policymaker (and thus potentially liable under § 1983) if they are responsible for making law or setting policy in a given area of municipal business, *Sweetin*, 48 F.4th at 392, while a final decisionmaker can be liable under that law only if they possess "final authority to establish municipal policy with respect to the action ordered."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).

At the outset, Rose's *respondeat superior* claims should be dismissed as West Monroe cannot be liable under § 1983 on that basis.  This finding disposes of the false arrest, assault, battery, and excessive use of force claims against the municipality.

The status of the remaining § 1983 claims against West Monroe turns on whether Rose has alleged that violative conduct occurred pursuant to a municipal policy.  Plaintiff's allegations concerning an underlying policy are as follows:

> The actions of [Spoon and Russell] were taken due to the failure to properly train officers and pursuant to a policy of [West Monroe and other municipal defendants] to allow officers to arrest persons without probable cause in violation of the persons clearly established constitutional rights, to unlawfully punish persons by means of excessive and unnecessary force and continue to employ and allow violent officers to use excessive force on citizens[.] Upon information and belief, the defendant employers knew of the violent propensities of these officers but continued to employ them.

Third Amended Complaint [doc. #42, p. 5].  There are no allegations that a written document memorializes the "policy" to arrest individuals without probable cause, punish them by means of excessive force, or employ police officers with known violent propensities.  Consequently, Rose has failed to plead that the existence of a municipal policy.  Nor are there allegations that any of these practices are so widespread as to be accepted and expected.  Indeed, Plaintiff predicates her allegations on exactly one incident: the June 27, 2022, interaction that ended in her arrest.  These

10

allegations are insufficient to establish a municipal custom. Plaintiff has thus failed to plead the existence of a policy or custom that was the moving force behind the alleged violations.

Rose's remaining path to establish the City's municipal liability is the "single incident exception" in which an official with final policymaking authority commits the relevant act. Plaintiff again fails to clear this hurdle as there are no allegations that either Spoon or Russell are final policymakers, or that they were acting at the direction of final policymakers when the alleged misconduct occurred. As such, none of the alleged violations can be attributed to a final policymaker and thus do not reflect municipal policy.

In the face of all this, Rose argues that "it is apparent from the action of [Spoon and Russell] that the training provided by the [defendant entities] delegated to make policy has either not trained the officers in the exercise of reasonable force . . . , the need for probable cause[,] or the Fourth Amendment Rights of citizen[s.]" Opposition to M/Dismiss [doc. #31, p. 5]. A conclusory statement of this nature – made in an opposition briefing, not controlling pleadings, no less – is insufficient to move allegations devoid of meaningful detail into the realm of plausibility. In short, Rose has failed to plead the existence of a municipal policy or custom that was the moving force behind the alleged violation of her rights and therefore has failed to state a claim under § 1983 against West Monroe.

Accordingly, it is RECOMMENDED that West Monroe's motion be granted to the extent it seeks dismissal of the § 1983 claims against it.

### III. Non-Juridical Entities

While not raised in the motion to dismiss, the undersigned now analyzes whether the Monroe Police Department, Police Department of West Monroe, Metro Narcotics Unit, and Ouachita Parish Sheriff's Office are capable of being sued. The capacity to sue or be sued is

determined by the law of the state in which a federal trial court sits. FED. R. CIV. P. 17(b)(3). Under Louisiana law, there are two types of persons capable of being sued: natural persons and juridical persons. *See* LA. CIV. CODE ANN. art. 24. Natural persons are "human being[s]," while juridical persons are entities "to which the law attributes personality, such as a corporation or partnership." *Id.* If an entity is neither a natural person nor a juridical person, then the entity lacks the capacity to sue or be sued. *See, e.g.*, *Roy v. Alexandria City Council*, 984 So.2d 191, 194 (La.App. 3d Cir. 2008) (finding entity lacks capacity to be sued if neither natural nor juridical person). This prohibition is absolute absent a law providing that the entity may otherwise be sued. *Dantzler v. Pope*, No. 08-3777, 2009 WL 959508, at *1 (E.D. La. Apr. 3, 2009).

Rose concedes that "the individual law enforcement agencies are not entities that can be sued" and thus "acquiesces to the dismissal of [the] West Monroe Police Department and the Ouachita Metro Narcotics Unit." Surresponse to M/Dismiss [doc. #40, p. 1]. "[T]he individual law enforcement agencies" should be understood to also encompass the Monroe Police Department and the Ouachita Parish Sheriff's Office. In any event, this court has previously held that the Monroe Police Department is incapable of being sued. *See Badger v. Police Dep't City of Monroe*, No. 21-CV-01311, 2021 WL 3394914, at *2 (W.D. La. July 19, 2021) ("[T]he claims against [the Monroe Police Department] should be dismissed for lack of capacity to be sued because it is not a juridical entity capable of being sued."), *report and recommendation adopted*, 2021 WL 3385006 (W.D. La. Aug. 3, 2021). Furthermore, case law indicates that the proper defendant in a cause of action implicating the Ouachita Parish Sheriff's Office is the Ouachita Parish Sheriff in his official capacity. *See Porche v. St. Tammany Parish Sherriff's Office*, 67

F.Supp.2d 631, 635 (E.D. La. 1999) ("[T]he local sheriff in his official capacity is the proper person to sue or to bring suit in a cause of action involving a parish's sheriff department.").

Accordingly, it is RECOMMENDED that the claims against the Monroe Police Department, Police Department of West Monroe, Metro Narcotics Unit, and Ouachita Parish Sheriff's Office be dismissed with prejudice.[5]

## IV. Motion to Stay

The undersigned now turns to Russell's motion to stay. M/Stay [doc. #15]. In support of the motion, Russell argues that there is significant overlap in the issues between the instant case and the pending criminal case against Rose, and that Plaintiff's claims are barred under *Heck*, 512 U.S. 477 (holding a successful civil rights action that would necessarily imply the invalidity of a plaintiff's conviction must be dismissed absent certain conditions). Memo in Support of M/Stay [doc. #15-1, pp. 3-6]. Rose counters, arguing that because the relevant issue in the civil matter is "the amount of force used in the arrest" not "the legality of the arrest," there is not overlap between the two cases. Opposition to M/Stay [doc. #25].

The rule in *Heck* does not extend to pending criminal matters. *See Kato*, 549 U.S. at 393-94 (finding the *Heck* rule applies when there has been a conviction or sentence that has not been invalidated but does not apply to pending criminal charges). As Rose is facing pending criminal charges, *Heck* does not apply here. However, as discussed *supra*, in civil cases involving claims "related to rulings that will likely be made in a pending . . .criminal trial," courts are empowered to stay the civil matter until resolution of the criminal one. *Id.* Rose's claims in the instant matter are plainly related to the criminal charges she faces. Her claims and the charges brought

---

[5] To the extent this recommendation is entered *sua sponte*, the parties may object during the fourteen (14) day period to respond to this report.

13

against her arise from a common nucleus of fact. The events giving rise to the instant controversy center on Rose's interactions with Russell, Spoon, and other officers during a vehicle stop that resulted in Rose's arrest on June 27, 2022. *See* Third Amended Complaint [doc. #42, pp. 3-5]. The criminal matter is predicated on alleged use of "a vehicle upon" a police officer and resisting an arrest effected by Spoon on June 27, 2022. Bill of Information [doc. #15-2]. Beyond factual similarities, the civil case includes claims for excessive use of force and unlawful arrest, Third Amended Complaint [doc. #42, p. 6], while one of the criminal charges against Rose is for resisting an officer. Bill of Information [doc. #15-2]. Rose's excessive force and unlawful arrest claims impugn the validity of any putative conviction for resisting arrest. *See Kato*, 549 U.S. at 395 n.5 ("[A] Fourth Amendment [unlawful arrest] claim can necessarily imply the invalidity of a conviction . . . ."). As it is manifest that the instant case involves claims "related" to the parallel criminal proceeding, *Kato* counsels in favor of a stay.

      Other relevant caselaw supports this conclusion. As discussed *supra*, courts have drawn on six relevant factors when determining if a stay is appropriate: (1) the extent to which the issues in the criminal and civil cases overlap; (2) the status of the criminal case; (3) the plaintiff's interest in proceeding expeditiously weighed against the prejudice to the plaintiff caused by a delay; (4) the private interest of and burden on the defendant; (5) the interest of the court; and (6) the public interest. *Matthews*, 2023 WL 8195516, at *8. The first factor is "considered the most important threshold issue." *Id.* at *9.

      Here, the issues present in the civil and criminal matter have significant overlap. This factor essentially parrots the *Kato* analysis, which counseled in favor of a stay and need not be repeated. Thus, the first – and most important – factor favors a stay.

Looking to the second factor, Rose has already been charged with aggravated battery and resisting an officer, Bill of Information [doc. #15-2], and a trial date has been set. January 24, 2024, Minute Entry [doc. #46-1].

On the third factor, Rose has not alleged that any hardship will arise from a stay of the case. Indeed, Plaintiff will not suffer material prejudice if the case is stayed until resolution of the criminal matter as the instant case is still in early days: no scheduling order has been issued, nor have Defendants filed answers.

Fourth, the prosecution in the criminal case, which is aligned with Defendants in this case, has an interest in not disclosing evidence or trial strategy prematurely. *See Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962) ("A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery . . . .").

Finally, concerning the fifth and sixth factors, staying the case will promote judicial economy and expediency, which aligns with the public's interest in timely resolution of the case. Furthermore, the public interest demands that "the integrity of the criminal case is entitled to precedence over the civil litiga[tion]." *Alexander v. Gilley*, No. 15-2732, 2016 WL 4926208, at *4 (W.D. La. Sep. 15, 2016).

In short, the undersigned finds that all relevant analyses weigh in favor of staying the instant matter.

Accordingly, it is ORDERED that the instant case be stayed pending disposition of Plaintiff's criminal proceedings.

## Conclusion

For the foregoing reasons,

15

**IT IS RECOMMENDED** that Defendant's motion to dismiss [doc. #26] be **GRANTED IN PART** and **DEFERRED IN PART**, that all official-capacity claims against Defendant Ray Spoon be **DISMISSED WITH PREJUDICE**, all claims under 42 U.S.C. § 1983 against Defendant City of West Monroe be **DISMISSED WITH PREJUDICE**, and ruling on the motion as it pertains to the remaining claims against Defendant Ray Spoon be **DEFERRED** until resolution of the criminal proceedings against Plaintiff Megan Rose.

**IT IS FURTHER RECOMMENDED** that the claims against Defendants Monroe Police Department, Police Department of West Monroe, Metro Narcotics Unit, and Ouachita Parish Sheriff's Office be **DISMISSED WITH PREJUDICE**.

**IT IS ORDERED** that Defendant Megan Russell's motion to stay proceedings pending disposition of Plaintiff Megan Rose's criminal proceedings [doc. #15] is **GRANTED** and that the parties file a motion to lift the stay as soon as the criminal proceedings are resolved. In any event, the parties shall file a status report with the Court every 180 days from entry of this order.[6]

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FED. R. CIV. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS**

---

[6] The presiding judge may elect to enter an administrative closure of this case pending resolution of the criminal proceedings.

**REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 12th day of April, 2024.

*[Signature]*

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE