## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

| | |
|---|---|
| **MEGAN ROSE** | **CIVIL ACTION NO. 23-cv-865** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **CITY OF MONROE** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

### REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants City of West Monroe and Ray Spoon.  [doc. #26].  The motion is opposed.  [doc. # 31].

For reasons assigned below, **IT IS RECOMMENDED** that the Motion to Dismiss be **GRANTED IN PART AND DENIED IN PART.  IT IS FURTHER RECOMMENDED,** sua sponte, that the Section 1983 individual capacity claims against Defendant Megan Russell also be **DISMISSED**.

### BACKGROUND

Plaintiff Megan Rose ("Rose") filed the instant suit on June 27, 2023. Complaint [doc. #1].  After filing two amended complaints, Amended Complaint [doc. #5]; Second Amended Complaint [doc. #13], Rose filed a third – and controlling – amended complaint on February 21, 2024.  [doc. #42].  The City of Monroe, Monroe Police Department, City of West Monroe ("West Monroe"), Police Department of West Monroe, Metro Narcotics Unit, Ouachita Parish Sheriff's Office, Officer Ray Spoon ("Spoon") of the Police Department of West Monroe, and Officer Megan Russell ("Russell") of the Ouachita Parish Sherriff's Office were all initially

named as Defendants. *Id*. at p. 2. Russell and Spoon are sued in both their official and individual capacities. *Id*. Rose alleges that Defendants are liable under 42 U.S.C. § 1983 for violations of her rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments of the U.S. Constitution and Article 1, §§ 2 and 5 of the Louisiana Constitution, as well as for various torts. *Id*. at 6.

On October 23, 2023, Russell filed a motion to stay. [doc. #15]. While the motion to stay was pending, on December 22, 2023, West Monroe and Spoon filed the instant Motion to Dismiss. [doc. #26]. On April 12, 2024, the undersigned issued a Report and Recommendation [doc. #47] recommending that the motion to stay be granted and the Motion to Dismiss be granted in part and deferred in part. On April 29, 2024, the District Judge adopted the Report and Recommendation, partially granting West Monroe and Spoon's Motion to Dismiss. [doc. #51]. All official capacity claims against Spoon and all § 1983 claims against West Monroe were dismissed with prejudice. Additionally, all claims against Defendants Monroe Police Department, Police Department of West Monroe, Metro Narcotics Unit, and Ouachita Parish Sheriff's Office were dismissed with prejudice. Spoon's Motion to Dismiss the individual capacity claims against him was deferred pending the outcome of Rose's criminal proceedings.

On December 31, 2025, Rose filed a motion to reopen the case [doc. #53] stating that the underlying criminal case had been dismissed. That motion was granted on January 2, 2026 [doc. #55]. On January 20, 2026, in light of both the passage of time and the resolution of Rose's criminal proceedings, the undersigned issued an electronic minute entry [doc. #61] sua sponte granting leave to Spoon and Rose to file supplemental briefing on the Motion to Dismiss [doc. #23].

On February 17, 2026, Rose filed a supplemental memorandum in opposition to the Motion to Dismiss. [doc. #64]. Rose argues that qualified immunity should not apply to Spoon's individual capacity claims as Spoon violated Rose's right to be free from unreasonable seizures and excessive force, and such rights were clearly established at the time. *Id*. Rose argues further that the state law claims should remain pending as well under the Court's supplemental jurisdiction. *Id*.

On February 20, 2026, Spoon filed a supplemental reply to Rose's opposition. [doc. #67]. Spoon argues that to overcome a defense of qualified immunity, Rose must demonstrate that the allegedly offending conduct, viewed from the perspective of a reasonable office on the scene at the time of the incident, violated a right which was clearly established. *Id*. Spoon contends that Rose has failed to meet that burden. *Id*.

Briefing is complete. Accordingly, the matter is now ripe.

## LAW AND DISCUSSION

### I.    Legal Standard

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A pleading states a claim for relief, inter alia, when it contains a "short and plain statement ... showing that the pleader is entitled to relief ..." FED. R. CIV. P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id*. Plausibility does not equate to possibility or probability; it lies somewhere in between. *See Iqbal*, 556 U.S. at 678. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556. Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal*, 556 U.S. at 678. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010) (citation omitted).

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly*, 550 U.S. at 556. Nevertheless, a court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989).

## II.   **Motion to Dismiss**

### A.   **Section 1983 Claims against Spoon in his Individual Capacity**

Section 1983 creates a private right of action for redressing the violation of federal law by those acting under color of state law. "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3

(1979)); *accord Graham v. Connor*, 490 U.S. 386, 393-94 (1989); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985); *Jackson v. City of Atlanta*, 73 F.3d 60, 63 (5th Cir. 1996); *Young v. City of Killeen*, 775 F.2d 1349, 1352 (5th Cir. 1985).

To prevail on a Section 1983 claim, a plaintiff must prove that a person acting under the color of state law deprived her of a right secured by the Constitution or laws of the United States. *See Blessing v. Freestone*, 520 U.S. 329, 340 (1997); *Daniels v. Williams*, 474 U.S. 327, 330 (1986); *Augustine v. Doe*, 740 F.2d 322, 324-25 (5th Cir. 1984).  A Section 1983 complainant must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations.  *See Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995); *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986); *Angel v. City of Fairfield*, 793 F.2d 737, 739 (5th Cir. 1986).

All of Rose's remaining claims against Spoon are brought in his individual capacity.  In response, Spoon asserts the qualified immunity defense.  [doc. #26-1. p. 14].  The doctrine of qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  In striking this balance, qualified immunity shields "government officials performing discretionary functions" from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.").

Once an official asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the defense by establishing a constitutional violation. *Jackson v. City of Hearne*, 959 F.3d 194, 201 (5th Cir. 2020) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc)). "To evaluate whether a government official is entitled to qualified immunity, we conduct a two-prong inquiry: we ask (1) whether the undisputed facts and the disputed facts, accepting the plaintiffs' version of the disputed facts as true, constitute a violation of a constitutional right, and (2) whether the defendant's conduct was 'objectively reasonable in light of clearly established law.'" *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015) (quoting *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001)). "For a right to be clearly established, 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Turner v. Lieutenant Driver*, 848 F.3d 678, 685 (5th Cir. 2017) (internal brackets omitted) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

An official's conduct is not objectively unreasonable "unless all reasonable officials in the [official's] circumstances would have then known that the [official's] conduct violated the plaintiff's rights." *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015) (citations omitted). When denying qualified immunity, a court must point to "controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013) (quoting *Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011)).

When the defense of qualified immunity is raised in a Rule 12(b)(6) motion, as it is here, it is "the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness.'" *McClendon*, 305 F.3d at 323 (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309

Page 6

(1996)).  The plaintiff must "assert facts which, if true, would overcome the defense of qualified immunity." *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014) (quoting *Wicks v. Miss. State Emp. Servs.*, 41 F.3d 991, 994 (5th Cir. 1995)).  A plaintiff seeking to overcome qualified immunity "must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity."  *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

1.      *Fourth and Fourteenth Amendment Claims*

Rose asserts two violations arising from the Fourth Amendment: false arrest and excessive force.[1]  She also appears to assert an excessive force claim under the Fourteenth Amendment.

Turning first to the excessive force claim, the Court finds that Rose has, at this stage, sufficiently pled an excessive force claim under the Fourth Amendment.  The Fourth Amendment creates a clearly established right to be free from excessive force during a seizure. *Trammell v. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017); *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).   A seizure that triggers Fourth Amendment protections occurs only when government actors have, by means of physical force or a sufficient show of authority, restrained an individual's liberty, and a reasonable person would believe that he was not free to leave. *United States v. Mask*, 330 F.3d 330, 336 (5th Cir. 2003) (citing *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).  Here, there is no dispute that Rose was seized within the meaning of the Fourth Amendment, as she was placed in handcuffs and told that she was under arrest, which is the quintessential example of a seizure.  *California v. Hodari D.*, 499 U.S. 621, 626 (1991)).

---

[1] Rose does not specify whether she is pleading the excessive force claim as part of her Fourth Amendment claims or the additional Eighth Amendment claims.  The Court will, therefore, analyze the claim under both amendments.

To the extent that Rose also seeks to assert an excessive force claim under the Fourteenth Amendment, however, her claim is foreclosed. "[A] due process claim is viable only when the alleged misconduct is not susceptible to proper analysis under the Fourth Amendment." *Estate of Parker v. Miss. Dep't of Pub. Safety*, 140 F.4th 226, 244 (5th Cir. 2025) (citation and internal quotation marks omitted). Because the parties herein seemingly do not dispute that a seizure occurred, the Fourth Amendment governs, and, thus, Rose's Fourteenth Amendment substantive due process claim is foreclosed. *Id.*; *see also Lewis v. Huval*, 2020 WL 2544811, at *10 (W.D. La. May 4, 2020), *report and recommendation adopted*, 2020 WL 2551032 at *1 (W.D. La. May 19, 2020) (plaintiff's claim is governed by the Fourth Amendment; therefore, his substantive due process claim fails as a matter of law.

Having established that the Fourth Amendment analysis governs, to survive dismissal, Rose must raise plausible claim of excessive force by showing that she suffered (1) an injury; (2) the injury resulted directly and only from a clearly excessive use of force; and (3) the force used was objectively unreasonable. *See*, *e.g.*, *Westfall v. Luna*, 903 F.3d 534, 547 (5th Cir. 2018); *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009). Excessiveness turns upon whether the degree of force used was reasonable in light of the totality of the circumstances facing the officer in each case. *Deville*, 567 F.3d at 167 (citing *Graham,* 490 U.S. at 396. By nature, excessive force claims are fact intensive and dependent on the circumstances of each case. *Deville*, 567 F.3d at 167. The Court considers facts such as, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Trammell v. Fruge*, 868 F.3d at 340 (quoting *Graham*, 490 U.S. at 396).

The injury necessary to support such a claim "must be more than a de minimis injury and must be evaluated in the context in which the force was deployed." *Schmidt v. Gray*, 399 F. App'x 925, 928 (5th Cir. 2010); *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (citing *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999)). However, even otherwise insignificant injuries may "qualify as a cognizable injury when the victim is maliciously assaulted by a police officer." *Williams*, 180 F.3d at 704. "What constitutes an injury in an excessive force claim is therefore subjective—it is defined entirely by the context in which the injury arises." *Id*.

The Court must consider the facts in their totality. From the perspective of the officers, by Rose's own admission, she had fled from officers in their initial encounter. Further, in her attempt to flee, Rose nearly struck one of the officers with her vehicle. Thus, while Rose was not actively resisting when she was pulled from her vehicle, it would have appeared to officers, even accepting all facts as alleged by Rose as true, that she was fleeing from officers and posed a risk to their safety.

Rose alleges only that she suffered from "abrasions to her breasts, abrasions to her chin, sprain to her arm and has suffered from [post-traumatic] stress syndrome." [doc. #42]. These injuries, within the larger context, do not rise to the level of excessive force necessary to sustain a claim under the Fourth Amendment. Finally, Rose has not alleged any facts to assert that the officers act "maliciously" in her arrest. Thus, Rose has failed to allege a violation of her Fourth Amendment rights as it pertains to excessive force.

Next, the Court looks to Rose's false arrest claim. To prevail on a Section 1983 false arrest claim, a plaintiff must show that the arresting officer did not have probable cause to make the arrest. *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004). On the other hand, "a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is

probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "Probable cause for a warrantless arrest exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. Watson*, 273 F.3d 599, 602 (5th Cir. 2001).

Even if an officer arrests someone without probable cause, qualified immunity immunizes the officer from suit unless the officer had fair notice that his conduct was unlawful. *Loftin v. City of Prentiss, Miss.*, 33 F.4th 774, 781 (5th Cir. 2022). "Fair notice requires clearly established law." *Nerio v. Evans*, 974 F.3d 571, 575 (5th Cir. 2020). "The onus is on the plaintiff to show that the law is so clearly established that 'every reasonable official' in the defendant-official's shoes would know not to engage in the complained-of conduct." *Loftin*, 33 F.4th at 781 (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 52 (2018)). To meet that burden here, Rose would have to "identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment" by arresting someone without probable cause. *Loftin*, 33 F.4th at 781.

Furthermore, decisions have recognized that it is immaterial to the probable cause determination whether a plaintiff actually committed the crime. "The Constitution does not guarantee that only the guilty will be arrested." *Baker v. McCollan*, 443 U.S. 137, 143 (1979). The determinative issue in a false arrest/detention cases is whether the totality of facts and circumstances within the officer's knowledge at the moment of arrest are sufficient to establish probable cause. *Cooper v. City of La Porte Police Dep't*, 608 Fed. Appx. 195, 200 (5th Cir. 2015). "There must not even arguably be probable cause for the ... arrest for immunity to be lost." *Haggerty*, 391 F.3d at 656. It must also be remembered that probable cause is not a high

bar and requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.  *Loftin*, 33 F.4th at 780.

Here, Spoon had at least an arguable basis to support probable cause for Rose's  arrest based on the information known to him: that Rose fled from officers and nearly struck an officer in the process.  Spoon claims, and Rose does not dispute, that at the time of her arrest, Spoon was unaware of Rose's reasons for fleeing.  Under the totality of the circumstances, Rose has failed to raise a plausible claim that Spoon violated her right to be free from false arrest.

Accordingly, **IT IS RECOMMENDED** that Spoon's Motion to Dismiss be **GRANTED** as to Rose's Section 1983 claims against him for violations of the Fourth Amendment.  To the extent that Rose attempted to assert a Fourteenth Amendment claim for excessive force, she has failed to shoulder her burden of asserting a plausible constitutional violation and to overcome his qualified immunity defense.  Thus, **IT IS FURTHER RECOMMENDED** that her Fourteenth Amendment claim against Spoon also be dismissed.

### 2.    *Remaining Section 1983 Claims*

The Court now turns to Rose's Fifth and Eighth Amendment claims.  The Fifth Circuit has made clear that "[t]he Fifth Amendment applies only to violations of constitutional rights by the United States or a federal actor."  *Ristow v. Hansen*, 719 Fed. App'x 359, 364 (5th Cir. 2018) (citation omitted).  Spoon is an employee of the West Monroe Police Department, Russell is an employee of the Ouachita Parish Sheriff's Office, and the City of West Monroe is a municipality. None of these remaining Defendants are the United States or a federal actor.  Therefore, Rose has not adequately pled a violation of the Fifth Amendment.

Regarding Plaintiff's Eighth Amendment claim, the Supreme Court has recognized that "the conditions or restrictions of pretrial detention . . . implicate only the protection against

deprivation of liberty without due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

The Fifth Circuit expanded on this rule by stating "[t]he constitutional rights of a pretrial

detainee . . .  flow from both the procedural and substantive due process guarantees of the

Fourteenth Amendment." *Martinez v. City of N. Richland Hills*, 846 Fed. App'x 238, 241 (5th

Cir. 2021) (citing *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996).  Rose's allegations

pertain only to pretrial detention, rather than detention following a criminal conviction.  As such,

her rights under the Eighth Amendment have not been implicated.  Thus, there can be no

violation of Plaintiff's right to be free from cruel and unusual punishment under the Eighth

Amendment.

Accordingly, **IT IS RECOMMMENDED** that Spoon's Motion to Dismiss be

**GRANTED** as to the remaining Section 1983 claims and that all such claims against Spoon in

his individual capacity be **DISMISSED WITH PREJUDICE**.

**B.      *Sua Sponte* Consideration of the Claims against Russell in her Official and Individual Capacities**

For the above-stated reasons, the Court also finds that all Section 1983 claims against

Russell in her individual capacity must be dismissed.  To the extent that the undersigned has

found that Rose failed to raise a plausible claim of a constitutional violation, the Court may

address Rose's claims against Russell *sua sponte*.   Moreover, "[a]lthough there is some

authority to the contrary, it appears that the majority of courts, including the Fifth Circuit,

currently hold that the court may raise the issue of qualified immunity *sua sponte*." *Alexander v.*

*Tangipahoa Par. Sheriff Dep't*, 2006 WL 4017825, at *5 (E.D. La. Oct. 2, 2006) (quotation

omitted) (collecting cases); *McCoy v. Bogan*, 2022 U.S. Dist. LEXIS 174538 (M.D. La. Sep. 9,

2022).  As the analysis of the individual capacity claims against Spoon applies with equal force

to the claims against Russell, she, too, is entitled to dismissal of the Section 1983 individual capacity claims against her.

In contrast, the Court cannot yet address the official capacity claims against Russell. Unlike Spoon, the suit against Russell in her official capacity was not duplicative of a claim against the municipality through which she was employed. Any official capacity claims against Russell are, in essence, a suit against the Sheriff of Ouachita Parish, but Rose did not assert a claim against the Sheriff.[2] Thus, the claim against Russell in her official capacity will proceed at this time.

Accordingly, **IT IS RECOMMENDED** that the Section 1983 claims against Russell in her individual capacity be **DISMISSED WITH PREJUDICE**, but the official capacity claims against Russell remain pending.

### C.    State Law Claims

Rose additionally alleges claims for invasion of privacy, denial of humane treatment, torture and cruel, excessive and unusual punishment, gross negligence, and intentional torts under Louisiana Constitution Article 1, §§ 2 and 5. Spoon contends that the state law claims must be dismissed because he is entitled to immunity from these claims under Louisiana Revised Statute § 9:2798.1.

Spoon submits that he is entitled to immunity under La. R.S. 9:2798.1, which provides in pertinent part:

> Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.

---

[2] While she did assert claims against the Ouachita Parish Sheriff's Office, that claim was dismissed because it is not a juridical entity capable of being sued.

La. R.S. 9:2798.1(B). However, immunity does not apply "(1) [t]o acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or (2) [t]o acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct."  La. R.S. 9:2798.1(C).

Louisiana courts have devised a two-step inquiry for determining whether the statute's policymaking or discretionary acts immunity applies to a given set of facts.  First, a court must look to whether a statute, policy, or regulation required the government employee to follow the particular course of conduct at issue.  *Aucoin v. Larpenter*, 324 So. 3d 626, 637 (La. App. 2021). If so, then the act or omission did not involve discretion and the immunity provisions of La. R.S. 9:2798.1 do not apply.  *Id*.  Second, if the act or omission did involve discretion, "the court must then determine whether that discretion is the kind that is shielded by the statutory immunity, that is, discretion grounded in social, economic or political policy."  *Id*. at 637-38.  "In other words, when the government acts negligently for reasons unrelated to public policy considerations, it is liable to those it injures."  *Id*. at 638; *see also Gregor v. Argenot Great Cent. Ins. Co.*, 851 So. 2d 959, 968 (La. 2003); *Dominique v. St. Tammany Parish*, 313 So. 3d 307, 315 (La. App. 2020). "The immunity statute does not protect operational governmental decisions, but only confers immunity for discretionary decisions based on social, economic, or political concerns."  *Aucoin*, 324 So. 3d at 638; *Dominique*, 313 So. 3d at 315; *Sauceberry v. Webre*, 2017 WL 1788096, at *4 (La. App. May 5, 2017); *Gregor*, 851 So. 2d at 968 (holding that governmental action at issue was "operational negligence" where "the government act[ed] negligently for reasons unrelated to public policy consideration").

Discretionary immunity under La. R.S. 9:2798.1 is an affirmative defense and, as such, the party raising it bears the initial burden of demonstrating its applicability. *See Dominique*, 313 So. 3d at 314; *Mercadel v. State through Dep't of Pub. Safety & Corr.*, 2019 WL 2234404, at *5 (La. App. May 15, 2019); *Sauceberry*, 2017 WL 1788096, at *4. "If the defendant establishes entitlement to immunity, the burden shifts to the plaintiffs to show there is conduct that would except the defendant[] from liability." *Dominique*, 313 So. 3d at 314 n.6. Under Louisiana law, "[i]mmunity statutes are strictly construed against the party claiming immunity." *Id*. at 314.

Here, Spoon argues that he enjoys categorical immunity under Louisiana law. However, "when the government acts negligently for reasons unrelated to public policy considerations, it is liable to those it injures." *Aucoin*, 324 So. 3d at 637. Stated differently, "'once a discretionary decision is made, the government entity is not protected from liability for conduct in carrying out the discretionary decision.'" *Populis v. State Dep't of Transp. & Dev.*, 222 So. 3d 975, 981 (La. App. 2017) (quoting *Banks v. Par. of Jefferson*, 108 So. 3d 1208, 1214 (La. App. 2013)). Thus, although a public entity in certain circumstances might enjoy immunity from liability for harm arising out of its discretionary decisions, La. R.S. 9:2798.1 does not shield a governmental actor when it implements such decisions in a negligent fashion. Spoon makes no argument other than flatly concluding that he is shielded from **all** liability.

In the alternative, Spoon argues that the Court could decline to exercise supplemental jurisdiction over the state law claims. Indeed, "the district courts may decline to exercise supplemental jurisdiction over a claim...if...(3) the district court has dismissed all claims over which it has original jurisdiction." *Lee v. Columbia/HCA of New Orleans, Inc.*, 611 Fed. App'x. 810, 812 (5th Cir. 2015). Here, however, the Section 1983 official capacity claims against

Page 15

Russell have not been dismissed; therefore, the Court has not dismissed all claims which imbue it with original jurisdiction, and it may not decline supplemental jurisdiction.

Accordingly, **IT IS RECOMMENDED** that Spoon's Motion to Dismiss be **DENIED** as to the remaining state law claims.

### CONCLUSION

For the above assigned reasons, **IT IS RECOMMENDED** that the Motion to Dismiss be **GRANTED IN PART AND DENIED IN PART.  IT IS RECOMMENDED** that the Motion to Dismiss be **GRANTED** as the Section 1983 claims against Spoon in his individual capacity.  **IT IS FURTHER RECOMMENDED** that Rose's Section 1983 claims against Spoon be **DISMISSED WITH PREJUDICE**.

**IT IS RECOMMENDED** that Spoon's Motion to Dismiss be **DENIED** as to the state law claims against Spoon.

**IT IS FURTHER RECOMMENDED** that the Section 1983 claims against Russell in her individual capacity be **DISMISSED WITH PREJUDICE**.[3]

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FED. R. CIV. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under FED. R. CIV. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

---

[3] This Report and Recommendation provides Rose with sufficient notice of and opportunity to respond to the possible dismissal of her claims against Russell. *Magouirk v. Phillips*, 144 F.3d 348, 359 (5th Cir. 1998).

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See Douglass v. U.S.A.A.*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

In Chambers, at Monroe, Louisiana, on this 23rd day of June, 2026.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE